# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEELAN R. BUSH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-CV-975-MAB |
| | ) |
| PHIL MARTIN, KIMBERLY STEPHENS, and JUSTIN HILL, | ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motions for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants Kimberly Stephens and Phil Martin (Docs. 51, 52).[1]

### BACKGROUND

Plaintiff initiated this civil rights lawsuit on August 31, 2023, alleging that multiple prison officials and medical providers at Robinson Correctional Center were deliberately indifferent to his diabetes and need for a special diet (Doc. 1). The complaint was screened pursuant to 28 U.S.C. § 1915A, and Plaintiff was allowed to proceed on an Eighth Amendment deliberate indifference claim against dietary supervisor, Justin Hill, based on his allegations that Hill refused to provide the special diets ordered by the prison physicians (Doc. 13). It was determined, however, that Plaintiff's allegations were

---

[1] Defendant Justin Hill waived exhaustion of administrative remedies as an affirmative defense (Doc. 39).

insufficient to state a claim against the other three named Defendants: Warden Rachel Dodd, Health Care Unit Administrator ("HCUA") Phil Martin, and Dr. Babish (Doc. 13).

Plaintiff filed a "supplement" to his complaint on December 27, 2023 (Doc. 16). The Court entered an Order noting that it seemed like Plaintiff was trying to amend the complaint with additional allegations and defendants (Doc. 17). Plaintiff was instructed that the Court does not accept piecemeal amendments to a complaint, so if he wanted to add new allegations or a new defendant, then he needed to file a motion to amend and submit a proposed amended complaint (Doc. 17).

Plaintiff then submitted an amended complaint on February 2, 2024, which was docketed as a Motion for Leave to File Amended Complaint (Doc. 21). Plaintiff was attempting, for a second time, to state a claim against Warden Dodd, HCUA Martin, Dr. Babish and to also bring in a new defendant: Nurse Kimberly Stephens (Doc. 21; *see also* Doc. 27). The Court later determined that Plaintiff should be allowed to proceed on an Eighth Amendment deliberate indifference claim against HCUA Martin and Nurse Stephens, but not Warden Dodd or Dr. Babish (Doc. 27).

Defendant Martin filed his motion for summary judgment on the issue of exhaustion in September 2024, arguing that Plaintiff never filed a grievance that named him or complained about any of his actions (Doc. 51). Defendant Stephens filed her motion for summary judgment in November 2024, arguing that Plaintiff did not fully exhaust his grievance about her prior to filing his amended complaint (Doc. 52). Plaintiff was given a deadline of December 9, 2024, to respond to both motions (Doc. 55). He filed a timely response in opposition to Defendant Stephens' motion, (Docs. 57, 58; *see also* Doc.

59), but did not file a response to Defendant Martin's motion.

The allegations pertinent to the motions for summary judgment are as follows: Plaintiff has Type 1 Diabetes but struggles to keep his blood sugar in check because of the meals served at Robinson (Doc. 21, p. 20). Healthcare Unit Administrator Phil Martin told Plaintiff that Dr. Babish ordered him a low concentrated sweet diet with his bedtime snack bag, but Plaintiff said he did not receive the special diet (*Id.* at p. 21). Plaintiff alleged that he thought Phil Martin and the dietary supervisor, Justin Hill, were in "co-hoots" to prevent him from getting a special diet (*Id.*).

Plaintiff had an appointment with a new doctor, Dr. Becker, on August 7, 2023 (Doc. 21, pp. 21–22). Plaintiff's A1C was extremely high, so Dr. Becker increased his insulin and put in an order to dietary to give Plaintiff a "pm salad," meaning a salad in the afternoon or evening (*Id.* at p. 22). By August 17th, Plaintiff had yet to receive an evening salad like the doctor ordered, and Dietary Supervisor Hill told Plaintiff that he was not going to get a salad because the therapeutic diet manual did not provide for it (*Id.*). Hill also said that he contacted health care and told them to cancel the order (*Id.*).

The next day on August 18, 2023, Plaintiff received a pink carbon copy of an order canceling Dr. Becker's salad order in the institutional mail (Doc. 21, pp. 22, 44–45). The cancelation order was signed by Nurse Kimberly Stephens (*Id.* at pp. 44, 45). Plaintiff was later told that Nurse Stephens wrote the cancelation order because Dietary Supervisor Hill called her and told her to do so (*Id.*).

About three days after receiving the cancelation order, Plaintiff gave his pink copy of the cancelation order to a nurse to ask Dr. Becker about it (Doc. 21, p. 45). The pink

copy was never returned to Plaintiff, and he was told that Nurse Stephens had gotten a hold of it and shredded it because she should not have written it in the first place (*Id.* at p. 46).

In other words, Plaintiff contends that Nurse Stephens wrote and issued an unauthorized order in Dr. Becker's name canceling the previously issued dietary order for salads. Nurse Stephens then tried to cover up her misdeed by removing the cancellation order from his medical file and destroying all copies of the order, including the pink copy that was sent to him. The Court determined these allegations were sufficient to state an Eighth Amendment claim that Nurse Stephens was deliberately indifferent to Plaintiff's serious medical needs by participating in the effort to deny him special diabetic dietary accommodations (Doc. 27, p. 7).

Plaintiff submitted a grievance on September 6, 2023, indicating that Dr. Becker entered an order on August 7, 2023, for evening salads, but the order was ignored by dietary and then improperly canceled by a nurse at the direction of the dietary supervisor (Doc. 21, pp. 66, 68). Martin was contacted for a response to Plaintiff's grievance and said that Dr. Becker's Therapeutic Diet Order "[o]n 8-4-23" was for "low concentrated sweets/snack" and there was "[n]othing documented for PM salads" (*Id.* at pp. 66, 68). Martin also pulled Plaintiff's commissary purchase list and sent a copy to Dr. Becker and the director of nursing "to review" (*Id.* at p. 68). Plaintiff gave various reasons as to why Martin's response to the grievance was inaccurate (Doc. 21, p. 50). The Court found that his allegations were sufficient to suggest that Martin failed to adequately investigate Plaintiff's complaints and provided a false statement about Plaintiff's medical record,

which was then used to deny Plaintiff's grievance and led to the continued deprivation of the physician-ordered dietary accommodations (Doc. 27, p. 7).

## LEGAL STANDARD

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has held that disputed factual questions can and should be resolved by the judge (rather than a jury) as a preliminary matter in an evidentiary hearing known as a "*Pavey* hearing." *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). *Accord Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015); *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). But when a prisoner does not raise sufficient factual allegations to demonstrate a genuine dispute of material fact, then no evidentiary hearing is necessary. *Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024) (citing *Smallwood*, 59 F.4th at 318). After reviewing both sides' briefs, the Court has determined that there are no genuine issues of material fact,

and a hearing is not necessary.

## DISCUSSION

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Failure to do so means failure to exhaust. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

As an individual in IDOC custody, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). The regulations require an inmate to first submit the grievance to their counselor. *Id.* at § 504.810(a).[2] Then the grievance goes to the grievance officer, who tenders a recommendation to the warden. *Id.* at § 504.830(e). The warden reviews the recommendation and provides the inmate with a written decision on the grievance. *Id.* If the inmate is unsatisfied with the warden's decision, the inmate can appeal to the Administrative Review Board ("ARB") for a final determination by the Director of the IDOC. *Id.* at § 504.850(a), (d), (e).

---

[2] There are exceptions to this rule, none of which apply here. 20 ILL. ADMIN. CODE §§ 504.810, 504.830 (2017).

An inmate may also request that a grievance be handled as an emergency by submitting the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840. If the warden finds that an emergency exists, then the grievance will be handled on an expedited basis. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified and must resubmit the grievance through the standard grievance process." *Id.*

## A. DEFENDANT KIMBERLY STEPHENS

Nurse Stephens asserts that there is only one relevant grievance that names her: Grievance #23-1438, dated September 6, 2023 (Doc. 53; Doc. 58; *see also* Doc. 53-1, pp. 7–16).[3] She does not contest that the content of the grievance sufficiently covers Plaintiff's allegations against her; rather, she argues that the grievance was not fully exhausted before Plaintiff filed his amended complaint naming her as a Defendant (Doc. 53, p. 9). The Court agrees.

The law is clear: a prisoner must exhaust their claims *before* filing suit. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted."). *See also Chambers v. Sood*, 956 F.3d 979, 981 (7th Cir. 2020) ("The [PLRA] requires *pre-suit* exhaustion; pursuing administrative remedies while litigation is underway does not suffice."); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) ("[E]xhaustion must precede litigation."). New claims can be added to the suit by amending the complaint so long as they are fully

---

[3] Plaintiff does not argue there are any other grievances that should be considered with respect to Nurse Stephens (*see* Doc. 58).

exhausted by the time the plaintiff seeks to amend. *See Chambers*, 956 F.3d 984; *Cannon v. Washington*, 418 F.3d 714, 717–19 (7th Cir. 2005) (per curiam); *Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005).

Here, the Court questions whether Plaintiff's claim against Nurse Stephens in the amended complaint was actually "new" given that he had brought up allegations about her twice before he properly sought to add her as a Defendant. He first included an allegation in his original complaint that a nurse had canceled the salad order, although at that time he did not know the nurse's name and did not name the nurse as a defendant (Doc. 1 p. 22). Then when Plaintiff filed his "supplement" to his complaint in December 2023, he identified Nurse Stephens as the person who canceled the salad order and included additional allegations about her destroying copies of the cancelation order (Doc. 16, p. 1, 4–6). Plaintiff subsequently filed his motion for leave to amend the complaint to add Nurse Stephens as a Defendant on February 2, 2024 (Doc. 21).

The Court need not resolve the question of whether Plaintiff's claim against Nurse Stephens was "new" because even if the Court assumes that the latest date—the date Plaintiff filed his motion for leave to amend—is the applicable date for determining exhaustion, it is clear that Plaintiff failed to exhaust prior to asserting his claim against Nurse Stephens. He submitted grievance #23-1438 on September 6, 2023. The grievance went to Plaintiff's counselor and then the grievance officer before being denied by the warden on October 13, 2023 (Doc. 53-1, pp. 8, 9). Plaintiff appealed to the ARB, where his grievance was received on October 26, 2023 (*see id.* at p. 7). The ARB issued its decision denying Plaintiff's grievance approximately three and a half months later, on February 7,

2024 (*see id.*). That was five days ***after*** Plaintiff filed his motion for leave to amend the complaint to name Nurse Stephens (*see* Doc. 21). Because Plaintiff filed his motion for leave to amend his complaint before this grievance completed every step of the grievance process, it cannot serve to exhaust Plaintiff's claim against Defendant Stephens.

Plaintiff makes two arguments in an attempt to save his claim. First, he says that he was under the impression that the Court's Order regarding his "supplement," which was entered on January 2, 2024, gave him a 30-day deadline to submit an amended complaint (Doc. 57, p. 3). That Order, however, did not say anything at all about a deadline (*see* Doc. 17). Plaintiff's erroneous belief to the contrary, while unfortunate, does not excuse his premature motion to amend before he had exhausted his administrative remedies.

Second, Plaintiff says that while his motion to amend was pending and the Court had yet to review his proposed amended complaint, he "revised his amended complaint" with a "Motion for Emergency Awareness" filed on February 28, 2024, that included the ARB's response to the September 26th grievance (*Id.*; *see also* Doc. 25). The Court is unpersuaded. The Court treated Plaintiff's "Motion for Emergency Awareness" as a supplemental exhibit to his amended complaint (*see* Doc. 27, p. 8). That supplement cannot and did not do anything to change the fact that Plaintiff first submitted his amended complaint asserting a claim against Nurse Stephens on February 2, 2024. The Seventh Circuit has held that for purposes of determining whether a prisoner exhausted his administrative remedies prior to bringing suit, "an action is 'brought' . . . when the complaint is tendered to the district clerk," as opposed to when the judge determines that

the complaint passes screening under 28 U.S.C. § 1915A and files the complaint. *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004). Therefore, it stands to reason that the operative date for exhaustion with respect to an amended complaint is the date that the proposed amended complaint is tendered to the court, not the date on which the judge grants the motion for leave to amend and directs the clerk to file the amended complaint. *Chencinski v. Myers*, No. 19-CV-485-RJD, 2022 WL 612403, at *2 (S.D. Ill. Mar. 2, 2022) (holding inmate must exhaust administrative remedies regarding new claim before filing motion to amend complaint; it does not suffice to exhaust in the time between filing the motion to amend and the court's ruling on the motion).[4] Holding differently would frustrate the purpose of the PLRA. *See* Ford, 362 F.3d at 399.

## B. Defendant Phil Martin

Defendant Martin argues that Plaintiff filed various grievances in 2022 and 2023 regarding his healthcare and diet, some of which were fully exhausted, some of which were not (Doc. 51-1, pp. 2–5). According to Martin, none of the grievances ever named him or alleged any misconduct by him (*Id.* at pp. 8–9). Plaintiff did not file a response to Martin's motion for summary judgment and his failure is deemed an admission that Defendant's version of the facts is true. SDIL-LR 56.1(g) ("All material facts set forth in a Statement of Material Facts . . . shall be deemed admitted for purposes of summary

---

[4] *Cf. Gakuba v. Pannier*, No. 19-CV-1274-NJR, 2021 WL 1165114, at *4 (S.D. Ill. Mar. 26, 2021) (concluding prisoner was required to exhaust by the time he filed his original complaint, not by the time his claim was severed into a new case); *Moore v. Indiana*, 999 F.2d 1125, 1131 (7th Cir. 1993) (holding that a motion for leave to amend "tolls the statute of limitations, even though technically the amended complaint will not be filed until the court rules on the motion").

judgment unless specifically disputed."). That being said, Defendant Martin "still ha[s] to show that summary judgment [is] proper given the undisputed facts . . . ." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (citation omitted).

Administrative regulations require that the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c) (2017). The Court has carefully reviewed each of the grievances that Defendant Martin mentioned in his motion for summary judgment (Doc. 51-1, pp. 2–5). Plaintiff did not name Phil Martin in any of the above-described grievances or describe any conduct that could reasonably be imputed to him. Furthermore, there is nothing in the grievances that suggests health care administrators were a target of Plaintiff's complaints because they turned a blind eye to purportedly inadequate medical care or dietary concerns. Instead, Plaintiff only complains in these grievances about the actions of doctors and the dietary supervisor, which are claims uniquely distinct from complaining that administrators are ignoring his complaints or failing to ensure that he received adequate treatment. As such, the grievances cannot serve to exhaust Plaintiff's claims against Phil Martin. *See Roberts v. Neal Roberts v. Neal*, 745 F.3d 232, 236 (7th Cir. 2014); *Waldrop v. Wexford Health Sources, Inc.*, 646 Fed.Appx. 486, 490 (7th Cir. 2016) (unpublished opinion). Defendant Martin is entitled to summary judgment and shall be dismissed without prejudice as a Defendant in this case.

## CONCLUSION

The motions for summary judgment on the issue of exhaustion filed by Defendants Phil Martin and Kimberly Stephens (Docs. 51, 52) are **GRANTED.** Martin and Stephens are **DISMISSED without prejudice** as Defendants in this matter.

This matter shall proceed on Plaintiff's Eighth Amendment deliberate indifference claim against Justin Hill for refusing to provide and/or thwarting Plaintiff's access to a medically indicated diet

The stay on discovery on the merits of Plaintiff's claims (see Doc. 26) is **LIFTED**, and the parties may proceed with discovery. A new schedule will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: September 30, 2025**

                 s/ Mark A. Beatty
                 **MARK A. BEATTY**
                 **United States Magistrate Judge**